McKinnev, J.,
delivered the opinion of the Court.
The plaintiff in error was indicted in the Circuit Court of Decatur, for malicious shooting. At the March Term, 1855, on Tuesday of the Term, being the 6th of the month, he was put upon his trial on said indictment. The trial not being finished on that day, was resumed on the following day, (Wednesday,) and the record of the latter day’s proceedings shows, that the jury returned into Court and declared “that they could not agree, and John S. Walker, one of the jurors being withdrawn, a mistrial was entered.” Thereupon the case was continued “by consent,” until the next Term of the Court, and the prisoner entered into recognizance for his appearance accordingly. The record shows, that the Term continued until Saturday, the 10th day of the month. At the following July Term, the case was continued by the prisoner. And at the November Term .he was again put upon his *477 trial; was found guilty as charged in the indictment, and sentenced to two year’s imprisonment in the penitentiary. A new trial was moved for, and refused by the Court; and a bill of exceptions setting forth the evidence and the charge of the Court having been signed, an appeal in error was prosecuted to this Court. , ■
Upon this statement arises the first question for our consideration. It is assumed that the discharge of the jury, on the first trial, operated as a discharge of the defendant, and that he could not he tried a second time upon the same charge.
On this question, the decision of the American Courts differ very widely. The conflict grows out of the different views entertained as to the true meaning of the provision of the Federal Constitution, incorporated in the constitution of this and several of the other States; that no person shall be subject, for the same offence, to be twice put in jeopardy of life or limb. On the one hand, it is understood to mean nothing more than that, where a person has been tried upon a sufficient indictment, and a final verdict of acquittal or conviction has been pronounced by the jury, he cannot be indicted or tried again upon a charge of having committed the same supposed offence. Or, in other words, that it is but a repetition of the maxim of the common law, that no person shall be twice tried for the same offence. Upon this interpretation, the party accused can only be put in jeopardy by a verdict of the jury, and the judgment of the Court thereon. And therefore, it is held, that the discharge of the jury in the progress of the trial, before verdict, *478 is no violation of the right secured to the accused by the constitution; that it is a matter resting in the sound discretion of the Court; and that its exercise imposes no legal obstacle to putting the accused upon a second trial.
On the other hand, the clause of the Constitution is taken to mean something more than that the accused shall not be twice tried for the same offence; and that putting him upon trial, merely, was putting him in jeopardy of life or limb, in the sense of the constitutional restriction. And, therefore, that where a jury has once been empannelled, and charged with the trial of a prisoner, the discharge of the jury — unless by the consent of the prisoner, or in case of extreme necessity — will operate as an acquittal, and prevent his being again put upon trial. But as to what will constitute such a necessity as to authorize the Court to discharge the jury, before verdict, the cases which maintain the latter view of the constitutional provision, are somewhat at variance.
The course of decision upon this subject, in this State, has not been uniform. In the case of Water-house, (Martin & Yerger’s R. 278,) the opinion seems to have been entertained, that it was discretionary with the Court, even in capital cases, to discharge the jury. But in the latter case of Mahala, (10 Yerger’s R. 532,) it was held otherwise. It was ruled in that case, that the , discharge of the jury, before the close of the term, on the ground that the Court was satisfied that the jury eould not agree upon a verdict, was not such a ease of necessity as authorized the Court to discharge them; that the disagreement of the jury, *479 because their minds cannot arrive at the same conclusion upon the evidence, is not such a case of necessity as will authorize their discharge before the adjournment of the Court; that to justify a discharge, without the consent of the accused, the jury must be hindered from rendering a verdict by some physical impossibility. Whether this doctrine is maintainable upon the weight of authority, or sound reason, is a question well worthy of consideration, when a proper occasion shall be presented. But the case before us does not necessarily demand a discussion ^>f that question.
The principle of Mahalals case, if admitted to be correct, does not sustain the position assumed in the present case. In the former case it distinctly appears that the jury were discharged by the order of the Court, without the consent of the prisoner; and that upon this being done, at the same term of the Court, a motion was made to discharge the prisoner, on the ground that the discharge of the jury, under the circumstances, operated as an acquittal. But in the present case, it does not appear that the discharge of the jury was the sole act of the Court, or without the prisoner’s consent. On the contrary, the inference rather is, from the import and language of the entry upon the record, that it was by the consent of the parties — the prisoner and the prosecuting officer; and this conclusion is corroborated by the fact, that, upon the discharge of the jury, the case was continued, “by consent,” until the next term of the Court; and still more strongly by the additional fact, that neither at the time when the prisoner was again put upon *480 trial, nor at any stage of the proceedings in the Court below, was this objection made in any form. It is now, for the first time, sought to be taken advantage of as a ground of error for reversing the judgment.
If the doctrine contended for were conceded to be applicable, not only to capital cases, but likewise to felonies of an inferior grade, it ought perhaps to be applied less stringently to the latter than to the former class of cases. But, be this as it may, we think the doctrine ij inapplicable to the case presented by this record. In the first place, the record does not show that the discharge of the jury was without the prisoner’s consent. And in the next place, the neglect of the prisoner to avail himself of the objection — had the discharge taken place without, or against his consent — at the proper time, and in the proper form, was a waiver of the supposed irregularity, and he is now precluded from assigning it as a ground for reversing the judgment.
2. The second error assigned, is in the instructions of the Court. In stating the rule in Grainger's case, (5 Yerg. 459,) the Court added, that “the proof ought to show that his (the prisoner’s) fears were founded on some reasonable ground; that the law would not excuse the criminal act of the defendant, though under the influence of fear, if his fears were baseless, and the phantoms of the imagination.” In this we think there is no error. The qualification of the rule in Grainger’s case, above laid down, has frequently been recognized by this Court since the case of Copeland vs. The State, (7 Humph. R.,) in which it was substan *481 tially approved. We hold it to be in accordance with the well established doctrine of the common law, and as the settled law in this State.
3. We think the conviction is well sustained by the proof, and that there is no error in the record. Judgment affirmed.